UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

——————————————————————

MOHAMMED USAMA YOUSIF AL NASSAR,

      Petitioner,

      -v-

PHILIP RHONEY, *in his official capacity as
Deputy Field Office Director, Buffalo Field Office,
U.S. Immigration & Customs Enforcement*;
TAMMY MARICH, *in her official capacity as
Field Office Director, Buffalo Field Office, U.S.
Immigration & Customs Enforcement*;
DAVID J. VENTURELLA, *in his official capacity as
Acting Director, U.S. Immigration & Customs
Enforcement*, MARKWAYNE MULLIN, *in his
official capacity as Secretary of Homeland Security*; and
TODD BLANCHE, *in his official capacity as Acting
U.S. Attorney General*,[*]

      Respondents.

——————————————————————

26-cv-311-RCW

DECISION & ORDER

Petitioner Mohammed Usama Yousif Al Nassar is currently detained in the

custody of the U.S. Department of Homeland Security ("DHS"), Immigration and

---

[*] All respondents are sued in their official capacities.  Under Federal Rule of Civil Procedure 25(d), Acting Director Venturella, Secretary Mullin, and Acting Attorney General Blanche are automatically substituted for former Acting Director of ICE Todd Lyons, former DHS Secretary Kristi Noem, and former Attorney General Pamela Bondi.  The Clerk of the Court is respectfully directed to update the case caption accordingly.

Customs Enforcement ("ICE") at the Buffalo Federal Detention Facility in Batavia, New York. He filed a petition for relief under 28 U.S.C. § 2241, arguing that his detention violates the Fifth Amendment, the Immigration and Nationality Act ("INA") and related regulations, and the Administrative Procedure Act ("APA").

Respondents—Deputy Field Office Director of ICE's Buffalo Field Office Philip Rhoney, Field Office Director of ICE's Buffalo Field Office Tammy Marich, ICE's Acting Director David J. Venturella, DHS Secretary Markwayne Mullin, and Acting U.S. Attorney General Todd Blanche (collectively, "the Government")— have moved to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim. Al Nassar responded.

For the reasons stated below, this Court DENIES the Government's motion.

**BACKGROUND**[1]

Al Nassar, "a native and citizen of Iraq," came to the United States as a refugee in August 2010, when he was fifteen years old. Pet. ¶ 13; Ex. 4 at 1. Two years later, he was granted lawful permanent resident ("LPR") status. Pet. ¶ 13; Ex. 4 at 1. In 2017, Al Nassar was convicted in New York state court for attempted burglary in the second degree and sentenced to two years' imprisonment. Pet.

---

[1] The following facts are taken from the petition and its attached exhibits.

¶ 14; Ex. 4 at 1.   The following year, the Government commenced removal proceedings against him.  Pet. ¶ 14; Ex. 4 at 1.  An immigration judge ("IJ") revoked Al Nassar's LPR status and ordered him removed to Iraq.  Pet. ¶ 14; Ex. 2 at 1–2.  But the IJ granted him deferral of removal to that country under Article III of the Convention Against Torture ("CAT").[2]  Pet. ¶ 14; Ex. 2 at 1–2.  Al Nassar did not appeal his removal order.

On December 20, 2018, following his release from state custody, Al Nassar was taken into ICE custody.  Pet. at ¶ 15.  On March 20, 2019, having been detained by ICE for three months, he was released on an order of supervision because the Government was unable to "deport him to Iraq."  *Id.* at ¶ 17.  Over the subsequent years, Al Nassar "complied with all conditions" of his supervised release, obtained a job as a cook, and "was leading a law-abiding lifestyle and assisting his family."  *Id.* at ¶¶ 18–19.

---

[2] "To demonstrate eligibility for CAT deferral, an applicant must show that it is more likely than not that [he] will be tortured in h[is] country of removal; the torture must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'"  *Dolma v. Lynch*, 662 F. App'x 43, 44 (2d Cir. 2016) (summary order) (quoting 8 C.F.R. § 1208.18(a)(1), (7)).  "In practical terms, deferral of removal under CAT offers . . . only limited protection from removal, lasting only until such time, if any, as the threat of torture is removed[.]"  *Pierre v. Holder*, 738 F.3d 39, 47 (2d Cir. 2013).

On January 9, 2026, Al Nassar appeared at an ICE office for "a routine check-in" and was taken back into ICE custody. *Id.* at ¶ 20. He "was not informed why he was being re-detained," nor was he provided with "any travel documents or other permission" that the Government had obtained to remove him. *Id.* at ¶¶ 21, 23.

About five weeks later, on February 19, 2026, Al Nassar commenced this action under 28 U.S.C. § 2241, asserting that he was being detained in violation of the Fifth Amendment's Due Process Clause, the INA and its associated regulations, and the APA. He asks this Court to order his immediate release.

While the petition asserts seven separate causes of action, Al Nassar's petition essentially challenges his detention on two grounds. First, he asserts that his "prolonged" and "indefinite" detention violates the Constitution and 8 U.S.C. § 1231(a)(6), as set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at ¶¶ 41, 59, 65, 90–91. Second, he alleges that his detention is unlawful because the Government revoked his order of supervised release in violation of his Fifth Amendment rights, the APA, INA, and DHS regulations. *Id.* at ¶¶ 56–58, 75, 86, 92, 100. The Government moves to dismiss the petition based on both lack of

4

subject matter jurisdiction and failure to state a claim; the only argument it makes in support of dismissal, however, is that the petition is premature under *Zadvydas*.

## **STANDARD OF REVIEW**

"A district court may grant a writ of habeas corpus [under 28 U.S.C. § 2241] when a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Kapoor v. DeMarco*, 132 F.4th 595, 606 (2d Cir.) (quoting 28 U.S.C. § 2241(c)(3)), *cert. denied*, 146 S. Ct. 325 (2025). "A court reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)." *Williams v. DHS/ICE/Immigr. Ct.*, No. 22-CV-6539, 2023 WL 3585849, at *1 (W.D.N.Y. May 22, 2023) (quoting *Hines v. United States*, No. 22-CV-1622, 2023 WL 2346540, at *2 (D. Conn. Mar. 3, 2023)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A pleading is properly dismissed under Rule 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

5

face."[3] *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

## I.    Subject Matter Jurisdiction

It is not entirely clear to this Court that the Government intends to raise a jurisdictional challenge to Al Nassar's petition.  Notwithstanding its reference to Rule 12(b)(1) in its notice of motion, the Government's discussion of jurisdiction is confined to a section providing an "overview" of district courts' "scope of review in habeas proceedings" and it does not make any specific argument about why those jurisdictional limits are overrun in this case.  *See* Govt.'s Mem. in Support of Mot. to Dismiss ("Govt.'s Mem.") at 4 (capitalization and bold omitted). Nevertheless, mindful of federal courts' "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," this Court begins with a brief discussion of its jurisdiction to adjudicate Al Nassar's petition.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

---

[3] More is required for a petitioner to obtain relief in a section 2241 proceeding:  "[T]he petitioner . . . bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

As the Government notes, the REAL ID Act of 2005, as codified at 8 U.S.C. § 1252, confers the circuit courts with exclusive jurisdiction over challenges to removal orders and bars district courts from hearing such challenges. *Delgado v. Quarantillo*, 643 F.3d 52, 54–55 (2d Cir. 2011). As the Government appears to concede, however, district courts retain jurisdiction to hear habeas petitions from noncitizens challenging their detention during or following immigration proceedings. *See id.* at 55 (stating that "suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking" and citing Sixth Circuit case finding that district court had jurisdiction over habeas petition challenging noncitizens' arrest and detention). In fact, "courts in this [C]ircuit have universally held that the jurisdiction-stripping provisions of [section 1252] do not apply to petitioners . . . who challenge the lawfulness of their detention following revocation of an [order of supervised release]." *See Zhang v. Genalo*, 814 F. Supp. 3d 307, 320 (E.D.N.Y. 2025) (collecting cases).

In light of the above, this Court has little difficulty in concluding that it may exercise jurisdiction over Al Nassar's habeas claims. Al Nassar does not challenge—either directly or indirectly—his removal order; instead, he asserts that

the Government is detaining him in violation of the Constitution and federal law.

*See Delgado*, 643 F.3d at 55; *Zhang*, 814 F. Supp. 3d at 320.  The relief that Al Nassar

requests is in keeping with this understanding of his petition:  He does not seek

any relief relating to his underlying removal proceedings but only his release.  *See*

*Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 155 (W.D.N.Y. 2025) ("[W]hile section

1252 would bar this Court from exercising jurisdiction over any claims to enjoin

or stay [petitioner's] removal, [petitioner] is not seeking such relief here.").  This

Court therefore concludes that it has jurisdiction over Al Nassar's petition and

turns to the merits.

## II.   *Zadvydas* **Claim**

This Court first addresses Al Nassar's claim that the Government is

"subject[ing him] to prolonged, indefinite detention" in violation of the Fifth

Amendment's Due Process Clause and in excess of its statutory authority under

the INA.  Pet. at ¶¶ 59, 65, 90–91.

### A.   **Statutory Framework**

Under the INA, a noncitizen who is "ordered removed" must be detained

during a 90-day "removal period."  8 U.S.C. § 1231(a)(1)(A), (2)(A).  Section 1231

defines the "removal period" as beginning "on the latest of" three dates:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.

(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

*Id.* § 1231(a)(1)(B).  "Section 1231(a)(6) authorizes detention beyond that removal period for certain categories of removable noncitizens."  *Black v. Decker*, 103 F.4th 133, 143 n.13 (2d Cir. 2024).  Those subject to further detention include noncitizens who are "removable as the result of . . . violations of criminal law" or else are "determined by the Attorney General to be a risk to the community[] or to be unlikely to comply with the order of removal."  *Dong v. Charles*, No. 26-CV-85, 2026 WL 1473790, at *3 (W.D.N.Y. May 26, 2026) (quoting *Zhu v. Genalo*, 798 F. Supp. 3d 400, 407 (S.D.N.Y. 2025)); *see* 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) "places no explicit temporal limit on [the] detention" of those removable noncitizens who may be detained beyond the 90-day removal period.  *Black*, 103 F.4th at 143 n.13.  But in *Zadvydas*, the Supreme Court "read an implicit limitation into" section 1231(a)(6), holding that the section, "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's]

9

removal from the United States."  533 U.S. at 689.  The statute did not, the Court held, "permit indefinite detention"; interpreting it to do so "would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause—particularly because removal proceedings are "civil, not criminal."  *Id.* at 689–90.

Under *Zadvydas*, because noncitizens may be detained under section 1231(a)(6) only for the period necessary to allow the government to effect their removal, they may not be detained past the point at which removal is "reasonably foreseeable."  *Id.* at 699–700.  "This 'reasonably foreseeable' standard governs both whether continued detention is statutorily authorized and whether it is constitutional."  *Zheng v. Decker*, 618 F. App'x 26, 27 (2d Cir. 2015) (summary order).  "[F]or the sake of uniform administration in the federal courts," the Supreme Court held that a six-month period of detention was "presumptively reasonable."  *Zadvydas*, 320 F.3d at 701.  After the expiration of that period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to "rebut" that showing with adequate "evidence."  *Id.*  If the noncitizen satisfies that initial burden and the government cannot rebut it, "the

court should hold detention unreasonable and no longer authorized by statute."
*Id.* at 699–700.

### B.   Application

Here, Al Nassar is detained under section 1231(a)(6), and his removal period began on December 20, 2018, when Al Nassar was "release[d] from [state] custody" and detained by ICE.  Pet. at ¶ 16; *see* 8 U.S.C. § 1231(a)(1)(B)(iii).  Al Nassar was detained for three months in 2018 and 2019; this year, since being re-detained on January 9, 2026, he has been detained for an additional period of—as of the date of this decision—five months and fourteen days.  Pet. at ¶¶ 16–17, 20.  Thus, he has now been detained under section 1231 for a total of more than eight months.

The Government argues that Al Nassar's time in detention should be measured as of February 19, 2026, when he filed this petition.  It urges this Court to dismiss Al Nassar's *Zadvydas* claim as premature because at that time, even aggregating the two periods of detention, Al Nassar had been detained under section 1231 for only a little over four months.  For that reason, it contends, this Court need not resolve the "academic question" of whether multiple periods of

detention under section 1231 should be "aggregated" when assessing a *Zadvydas* claim.  Govt.'s Mem. at 8.

      *i.*     *Whether the Petition is Premature*

Some courts in this Circuit have dismissed *Zadvydas* claims when the petitioner had not been detained beyond the presumptively reasonable six-month period when the petition was filed, even when the petitioner had been detained beyond that period when the court rendered its decision.  *See Lucce v. Freden*, No. 25-CV-6342, 2025 WL 3214485, at *3 (W.D.N.Y. Nov. 18, 2025); *Dao v. Bondi*, No. 25-CV-5, 2025 WL 1005579, at *2 (W.D.N.Y. Mar. 26, 2025).  Other courts, however, have declined to adopt such a rule.  *See Dong*, 2026 WL 1473790, at *4 n.5 (collecting cases); *Diakhate v. Casey*, No. 23-CV-6736, 2024 WL 4882264, at *7 (W.D.N.Y. Nov. 25, 2024) ("While Petitioner's prolonged detention claim was premature in April 2024 (when the motion to dismiss was filed), the Court cannot reach that conclusion now on the record before it.").

This Court finds the second approach most appropriate here.  As of the date of this decision, Al Nassar has been detained for more than five months since his 2026 arrest and for more than eight months if his two periods of section 1231 detention are aggregated (a question addressed below).  Judicial economy is best

served by adjudicating the Government's motion to dismiss, rather than dismissing the petition without prejudice as premature and requiring Al Nassar to re-file.  *See Dong*, 2026 WL 1473790, at *4 n.5 ("Because the [first] approach accomplishes nothing more than forcing petitioners to take another step in the process, this Court declines to read such a requirement into *Zadvydas*. . . . Adding red tape to an already complicated system is needlessly inefficient—especially when a petitioner's freedom is at stake.").

    *ii.*    *Whether Multiple Periods of Detention May Be Aggregated*

This Court therefore turns to the second question identified by the Government: whether the two periods of Al Nassar's section 1231 detention should be aggregated in determining whether the presumptively reasonable six-month period has run.  Specifically, where, as here, a petitioner has been detained under section 1231, released because his removal is not reasonably foreseeable, and then taken back into custody without a new removal period under section 1231(a)(1)(B) having been triggered, do both periods of custody count under *Zadvydas*?  As the Government notes, "district courts are split" on this issue. *Naranjo v. U.S. Att'y Gen.*, No. 26-CV-177, 2026 WL 554623, at *1 (M.D. Fla. Feb. 27, 2026).  "Some courts have determined that each period of detention restarts the

removal-period clock," while "[o]ther courts have considered the aggregate of all periods of a petitioner's detention[ and ]re-detention following an order of removal, regardless of any intervening periods of release." *Id.* (collecting cases).

This Court adopts the latter position, joining the considerable number of district courts to aggregate the periods of detention under section 1231 in assessing a *Zadvydas* claim. *See, e.g., Jiang v. Genalo*, No. 26-CV-2402, 2026 WL 1413915, at *4 (E.D.N.Y. May 20, 2026) (collecting cases); *Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (same); *Patel v. Bondi*, No. 25-CV-16218, 2025 WL 3294353, at *1–2 (D.N.J. Nov. 26, 2025) (adding current five-month detention to previous period of detention to determine whether claim was premature under *Zadvydas*).

This conclusion stems from *Zadvydas* itself. There, the Supreme Court carefully interpreted the detention authority conferred by section 1231(a)(6), cautioning that a statute that allowed for indefinite civil detention would provoke grave due process problems. *Zadvydas*, 533 U.S. at 690. Any argument that the Government may avoid such constitutional issues "by simply releasing and then re-detaining a noncitizen" for intervals of less than six months runs counter to *Zadvydas*, and the Government cites no statutory or regulatory authority that confers it with such sweeping power. *See Villanueva v. Tate*, 801 F. Supp. 3d 689,

14

702 (S.D. Tex. 2025) ("The government's contention that it may avoid the holding of *Zadvydas* and re-start the six-month presumptively constitutional detention clock [by way of subjecting a noncitizen to multiple periods of detention] has no basis in either the statutes, the regulations, or *Zadvydas* itself."); *Chen v. Holder*, No. 14-CV-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) ("Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . , while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.").[4]

Holding that periods of detention under section 1231 should be aggregated in determining whether the "presumptively reasonable" period has been traversed does not turn *Zadvydas* into "a permanent 'Get Out of Jail Free Card' that may be redeemed at any time." *Contra Meskini v. Att'y Gen. of U.S.*, No. 4-CV-42, 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Even after the presumptively reasonable six-month period has passed, the noncitizen still must "provide[] good

---

[4] *Cf. also Dong*, 2026 WL 1473790, at *4 n.5 (noting, in a different context, that "if a detained non-citizen can bring a *Zadvydas* petition only after he or she has been detained for six months, then the government could do an end run to avoid review by releasing noncitizens just before six months of detention and then immediately re-detaining them," which "certainly would be at odds with the Supreme Court's concerns about '[a] statute permitting indefinite detention'" (alteration in original) (quoting *Zadvydas*, 533 U.S. at 690)).

15

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and for the court to order release, the government must be unable to "rebut that showing." *Zadvydas*, 533 U.S. at 701; *see also id.* ("[The six-]month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months."); *Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (stating that passage of "six-month presumptively reasonable period" is only "the first of *Zadvydas*'s hurdles"). And it is to that burden-shifting framework that this Court now turns.

### iii.    *Reasonable Foreseeability of Al Nassar's Removal*

"In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed noncitizens, and specific assurances from the target country regarding its willingness to accept a noncitizen." *Dong*, 2026 WL 1473790, at *4 (W.D.N.Y. May 26, 2026) (alterations omitted) (quoting *Hassoun v. Sessions*, Case No. 18-CV-856, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019)). "[F]or detention to remain reasonable, as the period of prior post[-]removal confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]." *Zadvydas*, 533 U.S. at 701.

"[T]o satisfy his burden under *Zadvydas*, [Al Nassar] must present more than 'mere assertions that removal is unforeseeable.'"  *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (quoting *Juma v. Mukasey*, No. 09-CV-3122, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009)).  At the same time, courts have held that a showing that the government failed to make any progress in repatriating a detainee since it "took him into custody"—combined with "the passage of time"—is "sufficient to meet [the petitioner's] initial burden."  *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (internal quotation marks and citation omitted); *see Lema v. Rhoney*, No. 26-CV-6020, 2026 WL 380402, at *2 (W.D.N.Y. Feb. 11, 2026) (same).

Because Al Nassar has been granted deferral of removal to Iraq under CAT, "he cannot be deported to Iraq."[5]  Pet. at ¶ 23.  Or at least, he cannot be deported to Iraq absent a change to that determination, which requires a new hearing before an immigration judge.  8 C.F.R. § 1208.17(d)(1); *see Ali v. Mukasey*, 529 F.3d 478, 482 & n.5 (2d Cir. 2008); *see also Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1160–61 (S.D. Cal. 2026) (stating that grant of deferral of removal "presents a legal impediment

---

[5] Al Nassar alleges that he has "a final grant of withholding"—rather than deferral—of removal under CAT.  Pet. at ¶ 23.  This appears to be a typographical error:  Earlier in the petition, he states that he was granted "deferral of removal" under CAT, *id.* at ¶ 14, a fact confirmed by the IJ's decision attached to the petition as an exhibit, *see* Ex. 2 at 1–2.

to Petitioner's eventual removal because he may not be removed to the [Democratic Republic of the Congo]—the only country [for which] he has a claim to citizenship—as long as the deferral of removal remains in effect.").

Of course, the simple fact that Al Nassar has been granted deferral of removal, in and of itself, does not mean that Al Nassar may not be removed in the foreseeable future. Section 1231 provides for the removal of noncitizens to countries other than the one from which they came to the United States, subject to certain procedural requirements and restrictions. *See* 8 U.S.C. § 1231(b); *Gurung v. Warden, S. Texas Ice Processing Ctr.*, No. 25-CA-01614, 2026 WL 93145, at *6 (W.D. Tex. Jan. 6, 2026) (summarizing certain "procedural requirements governing a noncitizen's removal to a third country"). But Al Nassar alleges that "[t]o date, neither [he] nor his counsel have received any written or otherwise formal notice or evidence of ICE's plans or efforts to remove him to a third country" and that he "is unaware of whether ICE has obtained any travel documents or other permission to remove him to a third country." Pet. at ¶ 23.

This Court therefore concludes—at least at the motion to dismiss stage— that Al Nassar has satisfied his initial burden of showing that his removal is not reasonably foreseeable. *See Senor*, 401 F. Supp. 3d at 430. Accepting the petition's

18

allegations as true, Al Nassar may not be removed to Iraq, and the Government has taken no discernible steps to remove him to any country other than Iraq, notwithstanding the time that has passed since his removal order was finalized and he was released from state custody (more than seven years) and the time that he has been detained by ICE during that period (more than eight months in total). *See Lema*, 2026 WL 380402, at *2 (petitioner satisfied initial burden to show that removal was not reasonably foreseeable where she was ordered removed "over seven years ago," "nothing in the record suggest[ed] that the government [wa]s any closer to accomplishing [removal]," and because she had been granted withholding of removal, "there [we]re limits on the countries to which [she could] be removed"); *Ndandu*, 819 F. Supp. at 1161 (petitioner satisfied burden where he had been "granted deferral of removal over three years ago, [but] no countries ha[d] been identified to which he might be removed . . . [n]or [wa]s there an indication that any country [wa]s willing or currently considering accepting him").

The Government—again, as assessed at this stage—has failed to rebut Al Nassar's showing.  It merely offers a conclusory statement from an ICE deportation officer that "ICE is presently seeking to remove [Al Nassar] to a country other than Iraq."  Govt.'s Mem. at 3; Kloosterman Decl. at ¶ 20.  This is

19

insufficient. *See Lema*, 2026 WL 380402 (holding that ICE deportation officer's "cryptic[] state[ment that] 'DHS is actively working with the Department of State on avenues to remove [p]etitioner to a third country'" was "inadequate to rebut [petitioner's] showing under *Zadvydas*").

This Court therefore denies the Government's motion to dismiss Al Nassar's challenge to his detention as prolonged and indefinite in violation of *Zadvydas*. Nonetheless, because the record in this case is relatively undeveloped—indeed, the Government has not yet answered Al Nassar's petition—this Court declines to rule on Al Nassar's petition at this time. The Government may address the reasonable foreseeability of Al Nassar's removal in its answer. *See Senor*, 401 F. Supp. 3d at 432 (directing the government to supplement the record with "evidence specific to [petitioner's] case showing that his deportation [was] likely to occur" in near future).

## II.    Remaining Claims

Al Nassar also asserts that his detention is unlawful because the Government revoked his order of supervision in violation of the Constitution and various federal laws and regulations. While the Government includes several exhibits that appear to be relevant to the revocation of Al Nassar's order of

supervised release, it does not advance any specific arguments for the dismissal of Al Nassar's claims related to that revocation.  To the extent the Government moves to dismiss those claims, this Court denies the motion.  The Government may address those claims in its answer.

### CONCLUSION

For the reasons stated above, this Court DENIES the Government's motion to dismiss the petition.  The Government shall file an answer responding to the allegations of the petition within 21 days of the date of this decision.  Along with that answer, the Government shall file and serve a memorandum of law addressing each of the issues raised in the petition and including citations to supporting authority and applicable sections of the INA.  Al Nassar shall respond within 14 days of the date of the Government's answer.

SO ORDERED.

Dated:          June 23, 2026

Hon. Richard C. Wesley
Senior Circuit Judge of the U.S. Court of
Appeals for the Second Circuit, sitting by
designation

21