UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOHAMMED USAMA YOUSIF AL NASSAR,

Petitioner,

-v-

26-CV-311-RCW
DECISION & ORDER

PHILIP RHONEY, *in his official capacity as Deputy Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*; TAMMY MARICH, *in her official capacity as Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*; DAVID J. VENTURELLA, *in his official capacity as Acting Director, U.S. Immigration & Customs Enforcement*, MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*; and TODD BLANCHE, *in his official capacity as U.S. Attorney General*,

Respondents.

---

Petitioner Mohammed Usama Yousif Al Nassar is currently detained in the custody of the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. He filed a petition ("Pet.") for relief under 28 U.S.C. § 2241, arguing that his detention violates the Fifth Amendment, the Immigration and

Nationality Act ("INA") and related regulations, and the Administrative Procedure Act ("APA").

Respondents—Deputy Field Office Director of ICE's Buffalo Field Office Philip Rhoney, Field Office Director of ICE's Buffalo Field Office Tammy Marich, ICE's Acting Director David J. Venturella, DHS Secretary Markwayne Mullin, and U.S. Attorney General Todd Blanche (collectively, "the Government")—moved to dismiss the petition. After this Court denied that motion, the Government answered the petition ("Ans.") and filed a supporting memorandum of law in opposition to the petition ("Gov't's Memo."); Al Nassar then replied ("Rep.").

This Court now grants in part Al Nassar's petition.

## BACKGROUND[1]

Al Nassar, a "native . . . of Iraq," came to the United States as a refugee in August 2010, when he was fifteen years old. Pet. at ¶ 13; Ans. at ¶ 3. Two years later, he adjusted to lawful permanent resident ("LPR") status. Pet. at ¶ 13; Ans.

[1] The following facts are taken from the petition, the answer, and the exhibits attached to those pleadings. *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."); *see also Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025) (resolving petition without hearing where "only issues of law" were presented (quoting 28 U.S.C. § 2243)). Unless otherwise noted, the facts are undisputed.

Al Nassar's exhibits are labeled as A, B, and C. The Government's exhibits are labeled as follows: Exhibit 1 (declaration from ICE Deportation Officer John Kloosterman), Exhibit 1A (Al Nassar's immigration records), and Exhibit 2 (documents related to Al Nassar's July 2026 custody review).

at ¶ 4. In 2017, Al Nassar was convicted in New York State court for attempted burglary in the second degree and sentenced to two years' imprisonment. Pet. at ¶ 14; Ans. at ¶¶ 10–11. While he was incarcerated, the Government commenced removal proceedings against him. Pet. at ¶ 14; Ans. at ¶ 12. An immigration judge ("IJ") revoked Al Nassar's LPR status and ordered him removed to Iraq. Pet. at ¶ 14; Ex. A (IJ's order); Ans. at ¶ 13. But the IJ granted him deferral of removal to Iraq under Article III of the Convention Against Torture ("CAT"). Pet. at ¶ 14; Ex. A; Ans. at ¶ 13. Al Nassar did not appeal his removal order.

On December 20, 2018, following his release from state custody, Al Nassar was taken into ICE custody. Pet. at ¶ 15; Ans. at ¶ 14. On March 20, 2019, having been detained by ICE for three months, he was released on an order of supervision because the Government was unable to "deport him to Iraq." Pet. at ¶ 17; *see* Ans. at ¶ 15; Ex. 1A at 7–12. In the years that followed, Al Nassar "complied with all conditions" of his supervised release, obtained a job as a cook, and "was leading a law-abiding lifestyle and assisting his family." Pet. at ¶¶ 18–19.

On January 9, 2026, Al Nassar appeared at an ICE office for a "routine check-in" at which ICE revoked his order of supervision and sent him to BFDF.[2] *Id.* at

[2] The parties disagree about whether ICE provided Al Nassar with sufficient notice and opportunity to be heard before revoking his order of supervision and re-detaining him. *Compare*

¶ 20; Ans. at ¶ 17. He has been detained at BFDF ever since. Pet. at ¶ 1; Ans. at ¶ 20. On July 9, 2026, a panel of ICE officials "conducted a post-order custody review" of his case "pursuant to 8 C.F.R. § 241.4(i)." Ans. at ¶ 19; Ex. 2 at 1. The panel recommended that Al Nassar remain detained, expressing its "belief that there is a significant likelihood of [his] removal [to a third county] in the foreseeable future." Ex. 2 at 1. The Government's answer reiterates that "[d]ue to the grant of deferral of removal to Iraq, ICE is presently seeking to remove [Al Nassar] to a country other than Iraq," Ans. at ¶ 18 (citing Ex. 1 at ¶ 20), citing a March 16, 2026 declaration of ICE Deportation Officer John Kloosterman, Ex. 1.

## STANDARD OF REVIEW

"A district court may grant a writ of habeas corpus [under 28 U.S.C. § 2241] when a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Kapoor v. DeMarco*, 132 F.4th 595, 606 (2d Cir.) (quoting 28 U.S.C. § 2241(c)(3)), *cert. denied*, 146 S. Ct. 325 (2025). In habeas proceedings under section 2241, "the petitioner . . . bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner

Pet. at ¶¶ 20, 22, *with* Ans. at ¶ 17. Because this Court dismisses as moot Al Nassar's claims related to the revocation of his order of supervision, it need not and does not resolve that dispute.

must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**DISCUSSION**

As this Court explained in its decision on the Government's motion to dismiss, while the petition asserts seven separate causes of action, Al Nassar challenges his detention on two grounds. First, he asserts that his "prolonged" and "indefinite" detention violates the Constitution and 8 U.S.C. § 1231(a)(6), as set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at ¶¶ 41, 59, 65. Second, he alleges that the Government revoked his order of supervision in violation of his Fifth Amendment rights, the APA, INA, and DHS regulations. *Id.* at ¶¶ 56–58, 75, 86, 92, 100. He asks this Court to declare his detention unlawful and order his "immediate release." *Id.* at 23.

**I. *Zadvydas* Claim**

It is undisputed here that Al Nassar is detained under 8 U.S.C. § 1231, the section of the INA governing "the logistics of removal for immigrants" subject to "'final'" orders of removal. *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018) (quoting 8 U.S.C. § 1231), *as amended* (May 22, 2018). Section 1231 mandates that such noncitizens be detained for a 90-day "removal period" beginning either upon

the removal order's becoming "final" or upon the noncitizen's release from (non-immigration-related) custody. 8 U.S.C. § 1231(a)(1)(B), (2)(A). The Government and Al Nassar agree that his removal period began on December 20, 2018, when he was "release[d] from [state] custody" and detained by ICE. Pet. at ¶ 15; Ans. at ¶ 14; Rep. at 2; Gov't's Memo. at 4; *see* 8 U.S.C. § 1231(a)(1)(B)(iii).

Section 1231(a)(6) authorizes detention "beyond the removal period" in certain circumstances. *See* 8 U.S.C. § 1231(a)(6). Those subject to further detention include noncitizens who are "removable as the result of . . . violations of criminal law" or else are "determined by the Attorney General to be a risk to the community[] or to be unlikely to comply with the order of removal." *Dong v. Charles*, No. 26-CV-85, 2026 WL 1473790, at *3 (W.D.N.Y. May 26, 2026) (quoting *Zhu v. Genalo*, 798 F. Supp. 3d 400, 407 (S.D.N.Y. 2025)); *see* 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) "places no explicit temporal limit on [the] detention" of those removable noncitizens who may be detained beyond the 90-day removal period. *Black v. Decker*, 103 F.4th 133, 143 n.13 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026). But in *Zadvydas*, the Supreme Court "read an implicit limitation into" section 1231(a)(6) "in light of the Constitution's demands." 533 U.S. at 689. The Court held that section

1231(a)(6) "limits . . . post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id.* That is, under *Zadvydas*, noncitizens may be detained under section 1231(a)(6) for only the period necessary to allow the government to remove them. *Id.* at 699–700.

*Zadvydas* "provided a framework [for] habeas courts . . . to review claims challenging continued detention under section 1231(a)(6)." *Dong*, 2026 WL 1473790, at *4 (alteration omitted) (quoting *Qasemi v. Kurzdorfer*, No. 25-CV-668, 2025 WL 2938607, at *3 (W.D.N.Y. Oct. 16, 2025)). First, "for the sake of uniform administration in the federal courts," the Supreme Court held that a six-month period of detention was "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. After the expiration of that period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to "rebut" that showing with adequate "evidence." *Id.* If the noncitizen satisfies that initial burden and the government cannot rebut it, "the court should hold detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Al Nassar was detained for three months in 2018 and 2019. Pet. at ¶¶ 15, 17; Ans. at ¶¶14–15. Since being re-detained on January 9, 2026, he has been held for

an additional period of—as of the date of this decision—more than seven months. Pet. at ¶ 20; Ans. at ¶¶ 17, 20. Thus, he has now been held under section 1231 for a total of more than ten months and has certainly been detained beyond the "presumptively reasonable" period described in *Zadvydas*. 533 U.S. at 701; *see* Gov't's Memo. at 11–12.

**A. Al Nassar's Initial Burden**

In its previous decision on the Government's motion to dismiss, this Court concluded that—at least on the record before it—Al Nassar had "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, U.S. at 701. In its memorandum in support of its answer, the Government contests this conclusion, arguing that Al Nassar has failed to meet his initial burden. It notes that he has been detained only "for slightly more than the six month presumptively reasonable period." Gov't's Memo. at 11. Further, it contends that pointing to "the mere passage of time is insufficient," *id.*, and that Al Nassar has offered only a "bald assertion that his removal . . . is unlikely to occur in the reasonably foreseeable future," *id.* at 12 (quoting *Feliz v. Facility Adm'r*, No. 20-CV-6200, 2020 WL 13553498, at *6 (W.D.N.Y. July 28, 2020)).

Neither the mere passage of time nor conclusory assertions are enough to meet a petitioner's initial burden under *Zadvydas*. *See Kassama v. DHS*, 553 F. Supp. 2d 301, 306–07 (W.D.N.Y. 2008). But as this Court explained previously, courts have held that a showing that the government failed to make *any* progress in deporting a detainee since it "first took him into custody"—combined with "the passage of time"—is "sufficient to meet [the petitioner's] initial burden." *See Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (internal quotation marks and citation omitted); *Lema v. Rhoney*, No. 26-CV-6020, 2026 WL 380402, at *2 (W.D.N.Y. Feb. 11, 2026) (same).

That is what Al Nassar points to here. Pet. at ¶¶ 23–24; Rep. at 1–4. He cites not just the passage of time but the fact that he cannot be removed to his native country and the lack of any discernible progress that the Government has made in effectuating his removal over the seven-plus years since entry of his final order of removal and the ten-plus months that he has been held in section 1231 detention.[3] *See Lema*, 2026 WL 380402, at *2 (petitioner satisfied initial burden where he was ordered removed "over seven years ago," "nothing in the record suggest[ed] that

[3] The facts here are thus quite unlike those in *Feliz*, where the petitioner "bald[ly] assert[ed] that his removal" was "unlikely to occur," even though "the record indicate[d] that [his] removal [was] imminent" and "the only thing preventing [it was] the pendency of his [petition for review] before the Second Circuit." 2020 WL 13553498, at *6.

the government [wa]s any closer to accomplishing [removal]," and because he had been granted withholding of removal, "there [we]re limits on the countries to which [he could] be removed").

Further, the Government concedes that it released Al Nassar on an order of supervision in 2019 because it was unable to remove him at that time. Pet. at ¶ 17; Ans. at ¶ 15; Gov't's Memo. at 6 ("[W]hen [Al Nassar] was released from immigration detention in 2019, it was because ICE determined that there was not a significant likelihood of his removal in the reasonably foreseeable future."). It does not offer any evidence showing that its ability to deport him has changed whatsoever in the intervening period. *See Lin v. Warden, Orange Cnty. Jail*, No. 25-CV-9039, 2026 WL 412115, at *3 (S.D.N.Y. Feb. 13, 2026) (petitioner satisfied initial *Zadvydas* burden by demonstrating that his home country had refused to accept him and that he was previously released on order of supervision because he could not be deported). Al Nassar therefore has met his initial burden of showing that his removal is not reasonably foreseeable.

**B. Government's Rebuttal**

The Court previously concluded—again, based on the record before it—that the Government had failed to rebut Al Nassar's showing because it offered only a

conclusory statement from an ICE deportation officer that "ICE is presently seeking to remove [Al Nassar] to a country other than Iraq." Gov't's Mem. in Supp. of Mot. to Dismiss at 3. The Court therefore denied the Government's motion to dismiss but deferred a decision on the petition until the Government had a chance to answer.

The Government, however, offers little new material in its answer and supporting documents. In fact, the exhibits that it submitted with its answer are largely the same ones it submitted with its motion to dismiss; even the declaration from Officer Kloosterman, which was executed on March 16, 2026, is the same. Ex. 1; Ex. 1A. The only new information the Government offers is that on July 9, 2026, it "conducted a post-order custody review of [Al Nassar's case]" under its regulations, Ans. at ¶ 19, and that the panel conducting that review concluded "that there is a significant likelihood of removal in the foreseeable future," *id.* (quoting Ex. 2 at 1); *see* Ex. 2 at 1 (panel's written recommendation following custody review).

To satisfy its burden under *Zadvydas*, the Government must offer "evidence sufficient to rebut [Al Nassar's] showing." 533 U.S. at 701. The Government does not offer any such evidence here. It simply asserts, as it did before, that "ICE is

presently seeking to remove [Al Nassar] to a country other than Iraq." Ans. at ¶ 18 (quoting Ex. 1 at ¶ 20). But the basis for that statement is a five-month-old declaration, *see* Ex. 1, and the Government includes no details about any efforts that it is making to remove Al Nassar to a third country, much less the status of those efforts. And while the Government attempts to buttress its previous submissions with the panel recommendation on Al Nassar's July 2026 custody review, that decision is just as conclusory: It is devoid of any details about *why* there is a "significant likelihood of [Al Nassar's] removal in the reasonably foreseeable future"; it simply asserts that there is.[4] Ex. 2 at 1; *see* Ans. at ¶ 19.

That is not enough. *See Lema*, 2026 WL 380402, at *2 (holding that ICE deportation officer's "cryptic[] state[ment that] 'DHS is actively working with the Department of State on avenues to remove [p]etitioner to a third country'" was

[4] The Government states in a footnote, without further explanation, that Al Nassar's "criminal history serves as a basis to continue his detention." Gov't's Memo. at 13 n.6. As explained above, Section 1231(a)(6) provides for the detention beyond 90 days of those noncitizens convicted of certain crimes. But *Zadvydas*—interpreting the statute in light of constitutional requirements—limited section 1231(a)(6) detention to the "period reasonably necessary to bring about that [noncitizen's] removal." 533 U.S. at 689. As the Court explained, it had "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections"; "[t]here [was] no sufficiently strong special justification . . . for indefinite civil detention" under section 1231. *Id.* at 690–91. Thus, the Government cannot use Al Nassar's criminal past to justify detaining him indefinitely when his removal is not reasonably foreseeable. *Cf. Black*, 103 F.4th at 151 ("[C]ase after case instructs us that in this country liberty is the norm and detention is the carefully limited exception." (internal quotation marks omitted) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020))).

"inadequate to rebut [petitioner's] showing under *Zadvydas*"); *Escalante v. Noem*, No. 25-CV-182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025) (holding that government officials' "conclusory statements that they [were] taking steps to remove [p]etitioner to Mexico or perhaps Canada" were insufficient to rebut petitioner's showing). Indeed, courts have held that the government failed to rebut petitioners' showings even when officials offered substantially more details about removal efforts. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *5–6 (W.D.N.Y. Jan. 2, 2019) (holding that government failed to rebut showing although "[i]mmigration authorities ha[d] contacted a number of countries, engaged multiple government agencies, and undertaken high-level diplomatic efforts" because there was little to no indication those efforts were "likely to bear fruit"); *Ahrach v. Baltazar*, No. 25-CV-3195, 2025 WL 3227529, at *1, *5 (D. Colo. Nov. 19, 2025) (concluding that government failed to rebut showing where petitioner was granted withholding of removal to native country and only evidence offered of removal efforts was "outreach" to three other countries).

The Government nonetheless argues that its bare assertion of its ongoing removal efforts and its recent custody review are enough, stating that these "efforts 'are the type of Executive Branch foreign policy judgments to which . . .

judges [must] listen with care.'" Gov't's Memo. at 11–12 (some internal quotation marks omitted) (quoting *S.S. v. Bondi*, No. 25-CV-45, 2026 WL 790869, at *3 (M.D. Ga. Mar. 16, 2026)). Of course, "[o]rdinary principles of judicial review in this area recognize primary Executive Branch responsibility." *Zadvydas*, 533 U.S. at 700. Those principles "require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

But the Government does not ask the Court to defer to its foreign policy judgment here: It asks the Court to defer to its say-so. *Zadvydas* does not demand such deference; it counsels its opposite.[5] *Id.* at 699 ("The Government seems to argue that, even under our interpretation of the statute, a federal habeas court would have to accept the Government's view about whether the implicit statutory

---

[5] Indeed, the out-of-circuit district court cases the Government cites in support of its argument are in tension with *Zadvydas*'s careful delineation of the inquiry that habeas courts should undertake in this context. *See S.S.*, 2026 WL 790869, at *3 (holding that government's declaration stating that officials were "actively taking steps to effectuate [petitioner's] removal" to third country satisfied its *Zadvydas* burden); *Molina v. Holder*, No. 09-CV-283, 2010 WL 445918, at *7–8 (D. Neb. Jan. 26, 2010) (holding that petitioner had not satisfied initial burden and even if he had, "respondents provided the petitioner with sufficient due process by affording him a [post-order custody review]"). That is not perhaps entirely surprising given that one of those cases expressly opines that *Zadvydas*—a decision of the Supreme Court—"should be revisited." *S.S.*, 2026 WL 790869, at *3 n.5.

limitation is satisfied in a particular case, conducting little or no independent review of the matter. . . . [T]hat is not so.”).

In sum, because Al Nassar has showed that his removal is not reasonably foreseeable, and the Government has failed to rebut that showing, “there is no significant likelihood of [his] removal in the reasonably foreseeable future.” *See Zadvydas*, 533 U.S. at 701. His continued detention is therefore neither statutorily nor constitutionally permissible, and he is entitled to release. *See Dong*, 2026 WL 1473790, at *6.

**II. Remaining Claims**

Al Nassar also asserts that his detention is unlawful because the Government revoked his order of supervision in violation of the Constitution and various federal laws and regulations. Because this Court grants Al Nassar the relief he seeks—holding his continued detention unlawful and ordering his release—based his *Zadvydas* claim alone, it need not and does not reach his remaining claims, which it dismisses without prejudice as moot.[6]

[6] Al Nassar’s request in his petition for attorney’s fees and costs, Pet. at 23, does not alter this mootness calculation. *See London v. Polishook*, 189 F.3d 196, 200 (2d Cir. 1999).

## CONCLUSION

For the reasons stated above, this Court GRANTS IN PART Al Nassar's petition. More specifically, the Court grants his *Zadvydas* claim and orders him released. It denies his remaining claims without prejudice as moot.

**Within 24 hours of the issuance of this order**, the Government shall release Al Nassar from custody. The Government shall certify compliance with this order **within three days of the date of this order**.

SO ORDERED.

Dated: August 24, 2026

Hon. Richard C. Wesley
Senior Circuit Judge of the U.S. Court of Appeals for the Second Circuit, sitting by designation